UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JIMMIE CAIN, CAROLYN SAVAGE, and CAROLYN E. CAIN, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | No. 12 C 10194<br>Judge James B. Zagel |
| v. | |
| DEUTSCHE BANK AKTIENGESELLSCHAFT a/k/a DEUTSCHE BANK AG a/k/a DEUTSCHE BANK USA a/k/a DEUTSCHE BANK NA; et al. | |
| Defendants. | |

**AMENDED MEMORANDUM OPINION AND ORDER**

Plaintiffs Jimmie Cain, Carolyn Savage, and Carolyn E. Cain, on behalf of themselves and all others similarly situated, have brought this action for trespass, trespass to chattels, conversion, and violations of the Illinois Consumer Fraud Act ("ICFA"), and the Chicago Residential Landlord Tenant Ordinance ("RLTO"). Currently before the Court is Plaintiffs' motion to remand the case back to state court. For the following reasons, that motion is granted.

**BACKGROUND**

In October 2004, the named plaintiffs became tenants at 358 N. Hamlin, First Floor, in Chicago, Illinois. In late May 2008, a foreclosure complaint was filed against the owners of the property. The foreclosure was completed a year later, and in October 2009, an eviction complaint was filed against the named plaintiffs for possession of the property. The court

entered an order of possession in favor of Deutsche Bank, N.A., now one of the defendants in the instant case, but the plaintiffs continued to live on the property. In August 2010, they were allegedly evicted.

The named plaintiffs then brought this action in the Circuit Court of Cook County on behalf of themselves and four putative classes. The seven class counts of the complaint allege, *inter alia*, violations of the ICFA and the RLTO, and essentially challenge the procedure by which the plaintiffs were evicted. The complaint also contains four individual counts for trespass, trespass to chattels, conversion, and another violation of the RLTO, all arising from the allegedly wrongful eviction.

In December 2012, Defendants removed this action from the Circuit Court to Federal District Court. Plaintiffs now move to remand the case back to state court. Because subject matter jurisdiction in this Court is barred by the *Rooker-Feldman* doctrine, Plaintiffs' motion to remand is granted.

**DISCUSSION**

A federal court may generally remove to its jurisdiction a civil suit filed in state court so long as the district court has original jurisdiction. 28 U.S.C. § 1441. The removal statute is to be interpreted narrowly, and any doubt regarding jurisdiction should be resolved in favor of the states. *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993).

"[T]he *Rooker-Feldman* doctrine precludes lower federal court jurisdiction over claims seeking review of state court judgments." *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983). At its core, *Rooker-Feldman* requires a party seeking review of a state court judgment, or presenting a claim that a state judicial

2

proceeding has violated their constitutional rights, to pursue relief through the state court system and ultimately to the United States Supreme Court. *Long v. Shorebank Development Corp.*, 182 F.3d 548, 544 (7th Cir. 1999).

Broadly speaking, *Rooker-Feldman* applies in two instances. The less complicated of the two is where a claim is brought in federal court which directly seeks to set aside a state court judgment; such claims are barred without further inquiry.

More complicated is where the district court is "in essence" being called upon to review a state court decision. *See Feldman*, 460 U.S. at 483-84 n. 16. In such cases, the claim at issue is found to be "inextricably intertwined" with the state court judgment, and lower federal court review is barred, just as if the claim had sought direct review of a state court judgment. Accordingly, even claims that a federal plaintiff did not bring in a prior state court proceeding, where they are subsequently found to be inextricably intertwined with the state court judgment handed down on the claim that *was* brought, may be barred from federal review.

In an effort to protect against a potential injustice occurring under such circumstances, the court makes one additional inquiry. The court must determine whether the federal plaintiff had a "reasonable opportunity" to raise the claim at issue in the state court proceeding. *Long*, 182 F.3d at 558 (citing *Wood v. Orange County*, 715 F.2d 1543, 1547 (11th Cir. 1983)). "Where the plaintiff has had no such opportunity, he cannot fairly be said to have 'failed' to raise the issue.'" *Id*. Thus, although the claim the plaintiff wishes to bring in federal court may appear to essentially call upon the court to review a state court decision, the plaintiff is saved from dismissal, and federal jurisdiction is retained, where the plaintiff had no reasonable opportunity to bring the claim in state court. *See id*.

3

As will be discussed in greater detail below, this case offers a somewhat unusual application of *Rooker-Feldman*, at least relative to almost all of the cases cited by the parties. In the cases cited by both Plaintiffs and Defendants, *Rooker-Feldman* generally operates as an obstacle to plaintiffs seeking an audience in federal court. *See, e.g., Brown v. Bowman*, 668 F.3d 437 (7th Cir. 2012); *Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286 (7th Cit. 2007); *Taylor v. Federal Nat. Mortg. Ass'n*, 374 F.3d 529 (7th Cir. 2004); *Brokaw v. Weaver*, 305 F.3d 660 (7th Cir. 2002); *Long*, 182 F.3d at 548; *Nationscredit Home Equity Services Corp. v. City of Chicago*, 135 F.Supp.2d 905 (N.D.Ill. 2001); *but see Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 817-19 (7th Cir. 2010); *Sheenan v. Mortgage Electronic, Registration Systems, Inc.*, 2011 WL 3501883 (D.N.J. August 10, 2011). It is the plaintiff in these cases who urges that the doctrine does not apply. Here, *Rooker-Feldman* serves the plaintiffs' ends, as they wish to be heard, not in federal court, but in state court. It is instead the Defendants who argue that the doctrine does not apply, lest it interfere with their removal of this action under 28 U.S.C. § 1441.

Defendants offer four reasons why *Rooker-Feldman* does not apply here. Each argument fails.

First, while tacitly conceding that Plaintiffs seek to set aside the state court eviction judgment, Defendants argue that the complaint does *not* seek to set aside the foreclosure judgment. *Rooker-Feldman*, Defendants assert, thus does not apply to the foreclosure judgment.

As Plaintiff notes, however, the complaint does appear to reach foreclosure judgments:

> Class A consists of all persons in the State of Illinois who were defendants in civil court proceedings, including *without limitation* eviction proceedings…Class B consists of all persons living in homes and/or buildings in the State of Illinois *subject to foreclosure proceedings*… (emphasis added).

4

Moreover, as described above, it is not necessary that a plaintiff directly seek to set aside a state court judgment in order for *Rooker-Feldman* to apply. Claims that are inextricably intertwined with a state court judgment, and thus seek its review, "in essence," are also *Rooker-Feldman* barred. As discussed further below, I am persuaded that the claims in connection with the foreclosure are inextricably intertwined with the state court judgment.

Defendants next argue that Class Counts III-VII and Individual Counts I-IV are independent of the state court judgment, and thus are not inextricably intertwined with it. Determining whether a given claim is inextricably intertwined with a state court judgment "hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Taylor v. Federal National Mortgage Association*, 374 F.3d 529, 533 (7th Cir. 2004).

Defendants cite to *Long* in support of the contention that an alleged injury is not inextricably intertwined with a given state court judgment where the propriety of the state court judgment is not "directly at issue" with the claims raised by the alleged injury. *See Long*, 182 F.3d at 556. Defendants then argue that *Rooker-Feldman* does not apply to the claims raised in Counts III-VII and the Individual Counts because those claims do not directly challenge the propriety of the underlying eviction judgment.

But a closer reading of *Long* makes clear that whether a given claim is "directly at issue" with a prior state court judgment is not the operative inquiry. In *Long*, the Court noted that an alleged violation of the FDCPA was "independent of and complete prior to" the entry of the relevant prior state court judgment. *Id*. It was this independence and prior completeness that led

5

the Court to conclude that the FDCPA claim was sufficiently separate from the state court judgment that *Rooker-Feldman* did not apply. *Id*.

By contrast, the Court found that alleged due process violations that took place after entry of the state court judgment likely would not have occurred but for the state court judgment. *Id*. at 556-57. Accordingly, the Court held that those violations were not independent of or complete prior to the earlier state court judgment, and thus could not be considered separate from that decision.[1] *Id*.

Here, the injuries underlying Counts III-VII and the Individual Counts were not complete prior to the state court judgment, and they likely would not have occurred but for the state court judgment. The Counts challenge the procedure with which the plaintiffs were evicted, and the allegedly violative courses of action would not have been undertaken "absent the eviction order." *See id*. at 557; *see also Taylor*, 374 F.3d at 534. As such, I am persuaded that the claims are not independent of the state court judgment for purposes of *Rooker-Feldman*. To the contrary, they are inextricably intertwined with it, and *Rooker-Feldman* thus bars them from being heard in this Court.

But what of the reasonable opportunity exception? As noted above, a claim that would otherwise be barred by *Rooker-Feldman* is saved from dismissal where the federal plaintiff had no reasonable opportunity to bring the claim at issue in the earlier state court proceeding. And, in their third argument, Defendants assert that Illinois law would have precluded Plaintiffs from bringing their claims for money damages when Plaintiffs were the defendants in the state court proceedings. Defendants thus urge that Plaintiffs had no reasonable opportunity to bring the

---

[1] As Defendants correctly note, and as will be unpacked in further detail below, the *Long* Court ultimately found that the due process claims were not barred by *Rooker-Feldman*. Nevertheless, the analysis by which the Court came to its threshold determination – that, but for the reasonable opportunity exception, the claims brought by the federal plaintiff, in essence, sought federal review of the earlier state court judgment – remains relevant. *See Long*, 182 F.3d at 556-57; *see also Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 605 (7th Cir. 2008).

claims for money damages in state court, and, at least with respect to those claims, *Rooker-Feldman* does not apply. *Cf. Long*, 182 F.3d at 559.

But the procedural posture of this case is quite distinct from *Long* and the other cases in which courts have conducted the "reasonable opportunity" inquiry. In those cases, the plaintiff brought a claim in federal court that (arguably) sought federal review of a previous state court decision. There, *Rooker-Feldman* threatened the plaintiffs with dismissal. Here, Plaintiffs have initiated a subsequent *state court* proceeding which arguably seeks review of a previous state court decision.[2] Defendants have removed that action to federal court, thus creating a potential *Rooker-Feldman* problem. Here, however, *Rooker-Feldman* threatens, not dismissal, but remand back to state court. *See Abbas v. RBS Citizens Nat. Ass'n*, 2012 WL 1932690, *5 (N.D.Ill. May 29, 2012) (and cited cases).

On the face of it, applying the reasonable opportunity inquiry under these circumstances would be incongruous. In any event, there essentially appears to be no case in which a court has endeavored to do so.[3] Consider the concerns that prompted the exception. "Because the

---

[2] Of course, whether Plaintiffs' claim will be precluded on remand (assuming Plaintiffs ultimately do return to state court) will be a matter for the state court judge. I do not take up that question here. *See Taylor*, 374 F.3d at 535 (noting that, "where *Rooker-Feldman* applies, lower federal courts have no power to address other affirmative defenses, including res judicata.").

[3] To begin with, there are very few cases in which *Rooker-Feldman* has been analyzed in the context of this procedural posture – that is, a defendant seeking removal to federal court, as opposed to a plaintiff seeking an audience in federal court. Essentially non-existent are any cases from among that tiny subset that actually consider the reasonable opportunity exception to *Rooker-Feldman*. *Taylor* acknowledges that a *Rooker-Feldman* problem may arise in the removal context, but cites to no such cases. *Taylor*, 374 F.3d at 535. *Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 817-19 (7th Cir. 2010), raises *Rooker-Feldman* in the removal context, but the analysis does not reach the reasonable opportunity exception. *See also Dempsey v. JP Morgan Chase Bank, N.A.*, 272 Fed.Appx. 499, 501-03 (7th Cir. 2008) (same); *Sheenan v. Mortgage Electronic, Registration Systems, Inc.*, 2011 WL 3501883, *3-4 (D.N.J. August 10, 2011) (same).

Perhaps most interesting is *Abbas v. RBS Citizens Nat. Ass'n*, 2012 WL 1932690, *3-5 (N.D.Ill. May 29, 2012), where *Rooker-Feldman* is at issue in the removal context and the reasonable opportunity exception is indeed raised. Perhaps underscoring the incongruousness of applying the reasonable opportunity exception in this context, however, the parties both misconstrued the way each side of the argument cuts, and they each unintentionally argued for a position that the other side favored. *Id*. at *5. The unfortunate upshot is that the tension inherent in applying the exception under such circumstances is essentially lost in the parties' befuddled briefing, obscuring an

*Rooker–Feldman* doctrine extends beyond issues actually raised in state court to issues that are inextricably intertwined with such issues, a plaintiff failing to raise his claims in state court may forfeit his right to obtain review of the state court decision in any federal court." *Long*, 182 F.3d at 557-58 (citing *Feldman*, 460 U.S. at 482 n. 16). The reasonable opportunity inquiry, first set forth in *Wood*, places a limitation on the circumstances under which this rule may be applied – that is, it limits the circumstances under which a plaintiff may be held to have forfeited federal review of a claim despite the fact that the claim was not actually raised in the relevant state court proceeding. "The rule can apply only where the plaintiff had a reasonable opportunity to raise his federal claim in state proceedings. Where the plaintiff has had no such opportunity, he cannot fairly be said to have 'failed' to raise the issue." *Long*, 182 F.3d at 558; *Wood*, 715 F.2d at 1547. Accordingly, such a plaintiff is not denied access to federal court.

Here, however, unlike *Long* and the other cited cases, the plaintiff is not seeking an audience in federal court. Defendants have not satisfactorily shown why an inquiry centered around determining whether a plaintiff may fairly be held to have forfeited his or her right to federal review should be relevant when the plaintiff is not seeking to exercise that right in the first place.

The plaintiffs here wish to be in state court. Plaintiffs brought their claim in state court, and Defendants removed it. Applying the analysis implemented by the Seventh Circuit in *Long* and later in *Taylor*, I am persuaded that Plaintiffs' claims are inextricably intertwined with a previous state court decision and barred by *Rooker-Feldman*. To be sure, *Wood* created a shield for federal plaintiffs threatened with dismissal under *Rooker-Feldman* when they had had no reasonable opportunity to bring their claims in state court. *See Wood*, 715 F.2d at 1547. But the rule would be turned on its head were it now used as Defendants' sword, keeping Plaintiffs out

---

opportunity for the Court to confront this puzzle head on.

8

of state court and their chosen forum. I am not persuaded that this is what the Eleventh Circuit had in mind when it created the reasonable opportunity exception, nor is it what I believe the Seventh Circuit had in mind when it adopted it.

There is a plausible counter-argument to my ruling. One might say that the reasonable opportunity inquiry is not so much a measure of whether it would be fair to deny a plaintiff federal review of his or her claim, but rather a more neutral measure of simply how "connected" the federal claim is to the previous state proceeding. *See id*. ("an issue that a plaintiff had no reasonable opportunity to raise cannot properly be regarded as part of the state case"). Seen in that light, the reasonable opportunity inquiry is less an exception to the *Rooker-Feldman* rule than it is a measuring stick for when the rule should apply. *But see Kelly*, 548 F.3d at 605 (making express reference to the "reasonable opportunity *exception*") (emphasis added); *Abbas*, 2012 WL 1932690, *3 (same); *Nationscredit*, 135 F.Supp.2d at 912-13 (same); *Neely v. Law Offices of Kevin J. Hermanek, P.C.*, 122 F.Supp.2d 923, 925-26 (N.D.Ill. 2000) (same).

Defendants cite no case that has taken up that view of *Wood*, or the reasonable opportunity inquiry generally, nor have they themselves advanced this argument. Further, adopting this view would require marginalizing the focus that the reasonable opportunity inquiry places on (1) whether a court can fairly hold that a plaintiff has "failed" to raise the claim in the state court proceeding; and (2) the due process concerns potentially raised by denying a plaintiff access to federal court. *See Wood*, 715 F.2d at 1547. Both of these concerns are a poor fit in this context, where the plaintiffs have access to state court, where they wish to litigate in state court, and where they are not seeking to excuse any "failing" in a previous state court proceeding that might have barred their access to federal court.

9

It is also worth noting that the consequence of finding that a given claim is *Rooker-Feldman* barred varies depending on whether the doctrine is applied in the context of a plaintiff seeking access to federal court on the one hand, or the context of a defendant seeking to remove an action from state court on the other. The former results in dismissal, and the defendant prevails. *Wood*'s inclination in that context to identify an exception that shields plaintiffs from being unfairly denied access to federal court is consistent with this more dire potential consequence. *See Wood*, 715 F.2d at 1547 (noting the due process concerns raised by a rule that might deprive a plaintiff of "any forum, state or federal," to bring his or her claim.)

The latter context results in a disposition that is by no means immaterial, but is certainly less severe. The action is merely remanded back to state court, neither party actually prevails, and the case continues. *See Abbas*, 2012 WL 1932690, *5 (and cited cases). The danger that appears to have prompted both the *Wood* Court and the *Long* Court to embrace the reasonable opportunity exception does not seem quite so dramatic here.

This is concededly a close call. These considerations, however, along with the threshold understanding that there is a presumption in favor of the plaintiff's choice of forum and that doubt regarding jurisdiction should be resolved in favor of the states, *Allied-Signal*, 985 F.2d at 911, persuade me that *Rooker-Feldman* does indeed bar Defendants' removal of this action to federal court.

Finally, Defendants assert that the classes in connection with Counts I, II and VII are not limited to "state court losers." Because one of *Rooker-Feldman*'s threshold requirements is that the federal plaintiff was a "state court loser," Defendants argue, those counts, at least, cannot be remanded.

10

These classes, however, have not yet been certified. And as Plaintiff notes, the Supreme Court has taken it as all but a given that a non-named class member is not a party to the litigation prior to the class being certified. *See Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1349 (2013); *Smith v. Bayer Corp.*, 131 S.Ct. 2368, 2379 (2011). It is difficult to see how this Court's subject-matter jurisdiction over the action could be founded upon the claims of non-parties. *Accord Gibson v. Chrysler Corp.*, 261 F.3d 927, 938 (9th Cir. 2001) (noting that no reported decision has held to the contrary). The relevant claimants, the actual parties to the case, did indeed lose in the state court proceedings. That is the operative inquiry for *Rooker-Feldman* purposes, and Defendants' fourth argument also fails.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to remand is granted.

ENTER:

*/s/ James B. Zagel*

James B. Zagel
United States District Judge

DATE: July 24, 2013